IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RUSSELL LEE EBERSOLE,         )
                              )
     Movant,                  )
                              )     1:03cr112
v.                            )
                              )     1:06cv869
UNITED STATES OF AMERICA,     )
                              )
     Respondent.              )

MEMORANDUM OPINION

Before the Court is Russell Lee Ebersole's revised Motion
to Vacate, Set Aside, or Correct Sentence ("§ 2255 Motion")
(docket #207), in which he moves to have his conviction and
sentence set aside due to ineffective assistance of counsel and
violations of Brady v. Maryland, 373 U.S. 83 (1963).[1]  In
addition, Ebersole has filed a Motion for Discovery (docket
#198), in which he seeks discovery pertaining to the April 22,
2002, canine test, and a Motion for Interrogatories [sic] and
Production of Documents ("Discovery Request") (docket #218), in

---

[1] Ebersole originally filed a 109-page § 2255 Motion on July
26, 2006 (docket #191).  Pursuant to the Court's Order of August
7, 2006, Ebersole refiled a 30-page motion on August 29, 2006.
The government filed its opposition on October 10, 2006. On
October 25, 2006, the Court stayed the § 2255 Motion until the
Fourth Circuit's mandate issued on Ebersole's appeal of his re-
sentencing.  The mandate issued on November 8, 2006, and Ebersole
subsequently filed his reply on November 17, 2006.

Ebersole also filed a petition for writ of certiorari with
the Supreme Court on January 29, 2007.  Because that petition
only concerns the re-sentencing, which does not substantially
impact the Court's decision on this § 2255 Motion, the Court will
not wait for the Supreme Court's decision before deciding the
issues presented in the § 2255 Motion.

which he seeks further documentary evidence regarding the
internal testing procedures of the Bureau of Alcohol, Tobacco,
Firearms, and Explosives ("BATFE").

For the reasons set forth below, Ebersole's § 2255 Motion
will be dismissed and the two motions for discovery will be
denied.

## I. PROCEDURAL HISTORY

A grand jury returned an indictment against Ebersole on
March 13, 2003, charging him with twenty-six counts of wire fraud
and two counts of presenting false claims to the government, in
violation of 18 U.S.C. §§ 1343 and 287, respectively.  The
indictment generally alleged that Ebersole had devised a scheme
to obtain money from certain federal agencies by inducing them—by
means of false and fraudulent pretenses, representations, and
promises—to use his Detector Dogs's explosives detection
services.[2]

Retained counsel, John M. Tran and Spencer D. Ault,
Esquires, represented Ebersole during his trial, which began on
June 9, 2003.  On June 20, 2003, a jury convicted Ebersole of

---

[2] Ebersole was the president and director of a business
called Detector Dogs Against Drugs and Explosives, Inc.
("Detector Dogs"), a privately held Maryland corporation.
Detector Dogs trained dogs and their human handlers to find drugs
and explosives, and then offered the services of the canine teams
to customers.  Ebersole operated Detector Dogs alongside a pet
boarding and training facility in Frederick County, Virginia, in
the Western District of Virginia, as well as from his home in
Hagerstown, Maryland.

twenty-five counts of wire fraud and two counts of presenting false claims to the government.[3]  The Presentence Investigation Report calculated a Sentencing Guideline range of sixty-three to seventy-eight months, based on an offense level 26 and a criminal history category I.  On September 8, 2003, Ebersole was sentenced to, among other sanctions, seventy-eight months of imprisonment. This was based on a sentence of sixty months as to Counts 1 and 4 through 28, to be served concurrently, and eighteen months as to Count 3, to be served consecutively to Counts 1 and 4 through 28.

Gregory M. Stambaugh, Esquire, was appointed by the Court to handle Ebersole's appeal, which focused on claims that venue was defective in the Eastern District of Virginia and that the Court erroneously enhanced his sentence under the Sentencing Guidelines.  The convictions were affirmed, but the case was remanded for re-sentencing because a two-point enhancement to the offense level for abuse of a position of trust was found to be error in light of United States v. Booker, 543 U.S. 220 (2003). United States v. Ebersole, 411 F.3d 517, cert. denied, 126 S. Ct. 1142 (2006) ("Ebersole I").  Upon remand the Court sentenced Ebersole to a term of imprisonment of sixty-three months, which included sixty months as to Counts 1 and 3 through 26, to be served concurrently, and three months on Counts 27 and 28, to be

---

[3] The government had previously withdrawn Count 2 (wire fraud).

3

served concurrently with each other, and consecutively to Counts 1 and 3 through 26.

Since the re-sentencing, Ebersole has pursued multiple Freedom of Information Act ("FOIA") requests and post-conviction efforts to obtain discovery. These efforts culminated in Ebersole's Motion for New Trial, which was filed on December 22, 2005, and supplemented on March 8, 2006; April 19, 2006; August 14, 2006; and September 8, 2006. The Court denied the motion, as supplemented, on January 25, 2007. United States v. Ebersole, 2007 WL 219969 (E.D. Va. Jan. 25, 2007). Meanwhile, the Fourth Circuit affirmed the re-sentencing decision in an unpublished opinion on July 13, 2006. United States v. Ebersole, 189 Fed. Appx. 287 (4th Cir. 2006). Attorney Stambaugh represented Ebersole both at the re-sentencing and through the second appeal, but was allowed to withdraw after Ebersole accused him of ineffective representation in the instant motion.

## II. FACTUAL BACKGROUND

Although the facts of the case were summarized in detail by the Fourth Circuit in Ebersole I, and by this Court in the Memorandum Opinion addressing Ebersole's Motion for New Trial, a review of the key factual allegations as they pertain to this motion are included.

In the aftermath of the September 11, terrorist attacks, federal agencies sought the services of qualified explosive

4

ordnance detection canine teams for the protection of their
employees and the public.  Among those agencies were the
Department of State (the "State Department"), through its primary
contractor, Intercon Security Services, Inc. ("Intercon"), for
the State Department's Harry S Truman Building in Washington,
D.C.; the Board of Governors of the Federal Reserve System (the
"BOG-FED"), also for buildings in the District; and the Internal
Revenue Service (the "IRS"), through its primary contractor,
Worldwide Security Services, Inc. ("Worldwide"), for the IRS
service center in Fresno, California.  Ebersole persuaded those
agencies to retain Detector Dogs's services based on a series of
material misrepresentations that he made in written proposals and
in fabricated examination, certification, and training curriculum
documents.

     Detector Dogs initiated its services for the State
Department on September 24, 2001.  Eventually doubting the
competence of the Detector Dogs canine teams, the State
Department arranged to have an odor recognition proficiency test
administered to six of the dogs assigned to protect the Harry S
Truman Building.  The test was given on April 22, 2002, at the
BATF Canine Enforcement Training Academy in Front Royal,
Virginia, to the dogs on the State Department job, all of which
failed the test (with their Detector Dogs handlers
participating).  Immediately thereafter, Intercon terminated its

5

subcontract with Detector Dogs for the provision of EOD canine
teams to the State Department.

Detector Dogs had submitted its invoices to Intercon in the
District of Columbia.  Intercon reviewed and approved those
invoices for payment, paid Detector Dogs by check, and submitted
Intercon invoices (with the Detector Dogs invoices attached) to a
Washington, D.C., State Department office.  Consistent with State
Department procedures, the Washington office initially approved
the Intercon invoices, and then forwarded them for final payment
authorization to a State Department office in Rosslyn, Arlington
County, Virginia, in the Eastern District of Virginia.  Upon
final approval of the Intercon invoices, the State Department's
Rosslyn office communicated by wire with a Treasury Department
office in Kansas City, Missouri, which paid Intercon.

Detector Dogs began providing services at BOG-FED buildings
in Washington, D.C. on October 9, 2001.  In a covert on-site test
performed on April 4, 2002, three Detector Dogs canines failed to
detect the presence of fifty pounds of trenchrite 5 dynamite,
fifty pounds of TNT, and fifteen pounds of the plastic explosive
C-4 contained in three separate unmarked vehicles that were
allowed to enter a BOG-FED parking garage.  Based on those test
results, the BOG-FED cancelled its contract with Detector Dogs on
April 30, 2002.

Once the BOG-FED had decided to pay a particular Detector

Dogs invoice, relevant data was entered into a computerized accounting system in Washington, D.C., and then transmitted to the Federal Reserve Bank in Richmond, Virginia, in the Eastern District of Virginia, where the BOG-FED maintained an account. The amount of the Detector Dogs invoice was thereafter: (1) debited from the BOG-FED account at the Federal Reserve Bank; (2) credited to the Bank of America's reserve account, also at the Federal Reserve Bank; and (3) credited by the Bank of America from its reserve account to an account held by Detector Dogs at a Bank of America branch office in Frederick, Maryland.

The Detector Dogs teams began work at the IRS Fresno service center in early 2002, and they subsequently failed tests involving odor detection of hidden explosives.  On May 16, 2002, Worldwide terminated its subcontract with Detector Dogs for the IRS-Fresno work.  Worldwide had paid Detector Dogs by wire transfer from its bank in Chicago, Illinois, to the reserve account that Detector Dogs's bank, the Bank of America, maintained at the Federal Reserve Bank of Richmond.  Those payments then were credited by the Bank of America to Detector Dogs's account at the bank's Frederick, Maryland branch office.

Ebersole also pursued a contract for Detector Dogs to provide bomb-sniffing canine teams to the Federal Emergency Management Agency ("FEMA") for its disaster field office in New York City.  On September 27, 2001, Ebersole dispatched a

dog-and-handler team to New York City for FEMA; however, the team returned to Maryland the next day without performing any work. FEMA had agreed to reimburse Detector Dogs for travel expenses. Although the handler submitted expenses to Ebersole of $1,100 for the overnight trip, Ebersole submitted an invoice to FEMA in the sum of $11,514.

As instructed by FEMA, Ebersole sent that invoice to a post office box in Berryville, Clarke County, Virginia, in the Western District of Virginia.  In the normal course of business, a FEMA employee retrieved mail sent to that post office box, including the Detector Dogs invoice, and transported it to a central mail processing facility located in neighboring Loudoun County, Virginia, in the Eastern District of Virginia.  The invoice then was routed to the appropriate person in FEMA's Disaster Finance Division, at an office in Berryville. The central mail processing facility and the Disaster Finance Division office are located within FEMA's facilities on Mount Weather, which straddles Clarke and Loudoun counties.  The Detector Dogs invoice was eventually forwarded from Mount Weather to a FEMA contracting officer in New York.  FEMA subsequently remitted payment to Detector Dogs in the requested sum of $11,514.

On the basis of these activities and the payments made to Ebersole, the Government instigated and prosecuted the underlying proceedings in this district.

8

III. ANALYSIS

A.   Standard of Review

To be entitled to relief under § 2255, a prisoner must demonstrate either a lack of jurisdiction by the convicting court, a constitutional error, or a legal error so grave as to be a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). It is only these "fundamental" or constitutional errors that a court may consider on collateral review.

To succeed on a claim of ineffective assistance of counsel, a movant must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). First, he must show that counsel's performance was "deficient." Id. at 687. This is shown when, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." Id. at 690. In making this determination, "counsel is strongly presumed to have rendered adequate assistance." Id. Second, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Thus, under Strickland, Ebersole must show

9

both deficient performance and prejudice; the two are separate
and distinct elements of an ineffective assistance claim.
Spencer v. Murray, 18 F.3d 229, 232-233 (4th Cir. 1994).

B.   Ebersole's Arguments

Ebersole presents four arguments grounded on two main
claims: first, that he received ineffective assistance of counsel
at trial and at re-sentencing, and second, that the government
suppressed Brady/impeachment material concerning the April 22,
2002, test.

1.   Ineffective Assistance of Counsel for Failure to Object
to Venue on Grounds of Foreseeability

To support venue in the Eastern District of Virginia on the
wire fraud charges, the prosecution relied on various wire
communications involved in how Ebersole was paid for Detector
Dogs's services: (1) from the State Department in Rosslyn,
Arlington County, Virginia, to the Treasury Department in Kansas
City, Missouri, for the fourteen State Department-related
counts;[4] (2) from the BOG-FED in Washington, D.C., to the Federal
Reserve Bank in Richmond, Virginia, for the ten BOG-FED-related
counts;[5] and (3) from Worldwide's bank in Chicago, Illinois, to
the Bank of America reserve account in Richmond, for the single

---

[4] Counts 5, 7-8, 11-13, 15, 17, 19-20, and 23-26.

[5] Counts 1, 3-4, 6, 9-10, 14, 16, 18, and 21.

IRS-related count.[6]  Finally, to support venue for the two false
claims charges, the prosecution relied on the handling of
Ebersole's invoice at FEMA's Mount Weather mail processing center
in Loudoun County, Virginia, for the FEMA-related count;[7] and the
processing of an Intercon invoice (with a Detector Dogs invoice
attached) by the State Department in Rosslyn, Virginia, for the
State Department-related count.[8]

Ebersole's counsel unsuccessfully challenged the propriety
of venue at various points during the trial proceedings,
including filing and arguing a pretrial motion seeking dismissal
of the indictment, in a motion made at the close of the
prosecution's case-in-chief for judgment of acquittal on the
FEMA-related false claim count, and accompanying general
"continuing objections" to venue on all other charges.  Counsel
also filed a written objection to the prosecution's proposed
venue instruction on the false claims charges, and orally
objected to the venue instruction during the charge conference,
in a post-trial motion for judgment of acquittal on all counts,
and during a hearing on that post-trial motion.

On direct appeal, Ebersole's appellate counsel argued that

_____

[6] Count 22. A single FEMA-related wire fraud count-count
2-was dismissed at trial on motion of the prosecution.

[7] Count 27.

[8] Count 28.

the trial court erred in treating wire fraud as a "continuing offense," triable under 18 U.S.C. § 3237(a) "in any district in which such offense was begun, continued or completed"—including any district in which a subject wire communication was transmitted in the course of paying the perpetrator of the fraud scheme.  Alternatively, counsel argued that, even if wire fraud constituted such a continuing offense, venue in this district on the wire fraud counts was not constitutionally permissible because Ebersole did not intend or foresee the payment-related transmittals into and out of the Eastern District of Virginia.

The Fourth Circuit rejected counsel's first argument, finding that the trial court "correctly identified wire fraud as a 'continuing offense,' as defined in § 3237(a), properly tried in any district where a payment-related wire communication was transmitted in furtherance of Ebersole's fraud scheme," and concluding that venue was proper on the wire fraud charges "if, as the district court instructed and the jury found, he caused any payment-related wire communication to be transmitted to or from the Eastern District of Virginia."  <u>Ebersole</u>, 411 F.3d at 527.

Ebersole's alternative argument, that venue in this district was not foreseeable, was not reached on the merits by the Fourth Circuit, because trial counsel had not preserved the issue for appeal.  "Because every fact giving rise to Ebersole's present

12

foreseeability objection to venue clearly appeared on the face of
the indictment, Ebersole waived that objection by waiting until
the post-trial proceeding to raise it."  Id. at 528.  Ebersole
now argues that his trial counsel's failure to identify and
utilize case law supporting this foreseeability argument
constitutes ineffective assistance.

Ebersole's claim that his trial counsel wer ineffective in
their litigation of the venue issue fails because their conduct
was not "outside the wide range of professionally competent
assistance."  On direct appeal to the Fourth Circuit, Ebersole
identified only two cases to support his foreseeability
argument.[9]  Neither case is from the Fourth Circuit; thus, they
are not controlling.  Moreover, trial counsel actually brought
the Bezmalinovic case to the Court's attention at the original
sentencing hearing in the context of arguing numerous post-trial
motions.  In denying those motions, the Court noted that
Bezmalinovic was a district court case out of the Southern
District of New York and that the Fourth Circuit's decision in

---

[9] United States v. Bezmalinovic, 962 F. Supp. 435, 441
(S.D.N.Y. 1997) (concluding that bank's ministerial acts of
debiting and crediting accounts were insufficient to support
venue on fraud charge, because it was unintended and
unforeseeable by defendant that such acts would occur there);
United States v. Svoboda, 347 F.3d 471, 483 (2d Cir. 2003)
(recognizing that venue is proper in a district where defendant
intentionally or knowingly causes an act in furtherance of
charged offense to occur, or in a district where it was
foreseeable such act would occur).

United States v. Blecker, 657 F.2d 629 (4th Cir. 1981), was more persuasive.  Tr. at Sentencing at 2-3, Sept. 8, 2003.  This assessment was echoed by the Fourth Circuit in Ebersole I.  411 F.3d at 531 ("Nonetheless, Blecker provides us with ample guidance.").

Furthermore, in his § 2255 Motion, Ebersole solely relies on Svoboda, a decision issued on October 24, 2003.  Trial counsel's failure to cite the Second Circuit's Svoboda decision, which was not decided until four months after Ebersole was convicted by a jury and nearly two months after he was sentenced, cannot be said to be outside the range of acceptable professional conduct.  Cf. United States v. Roane, 378 F.3d 382, 397 (4th Cir. 2004) (counsel not ineffective in failing to make a Batson objection based on gender, when the Ninth Circuit was the only federal appellate court to extend the Batson principle to gender discrimination and the Fourth Circuit had explicitly rejected attempts to so extend Batson).  Thus, trial counsel's performance cannot be said to have been "deficient."

Furthermore, given the law of this circuit, there is not a "reasonable probability" that had the Svoboda decision been argued by trial counsel "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  As the Fourth Circuit found, the plain language of § 3237(a) provides that a prosecution for "any offense against the United States begun in

14

one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." The Fourth Circuit's ruling that wire fraud is a "continuing offense," as defined in 18 U.S.C. § 3237(a), effectively precludes an argument that foreseeability is a necessary element of the venue provision. Accordingly, Ebersole has failed to establish either prong of Strickland.

   2.   Ineffective Assistance of Counsel for Failure to Properly Investigate Purported Fourth Amendment and *Brady* Violations

   Succinctly put, Ebersole argues that documents received post-conviction, in response to several FOIA requests, reveal that the government withheld the testing standards actually utilized during the April 22, 2002, test conducted at the BATF Canine Enforcement Training Academy in Front Royal, Virginia, in violation of the government's duties under Brady. Ebersole argues that the disclosure of the BATF Test, which states that canines "certify on a minimum of 20 different explosives compounds in varying quantities from 2 to 20 grams" proves that the testimony of Richard Strobel and Robert Noll was perjurous and that the government's failure to turn over these documents before trial resulted in his counsel's failure to fully investigate whether the government began its inquiry only after

15

conducting an improper search, i.e., the April 22, 2002, test.

Contrary to Ebersole's assertions, the evidence identified is not sufficient evidence of government misconduct to result in prejudice under Brady.  This "new" evidence was discussed at length in Ebersole's Motion for New Trial, see Ebersole, 2007 WL 219969, and found insufficient to justify granting Ebersole a new trial.[10]  This "new" evidence is similarly insufficient to demonstrate that Ebersole's counsel was ineffective for failing to discuss it before trial and does not establish that the government violated Ebersole's Brady rights.  See United States v. Pollard, 959 F.2d 1011, 1020 (D.C. Cir. 1992) ("[I]n a § 2255 collateral challenge, an appellant, in order to gain relief under any claim, is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence.").

Moreover, the Court has explicitly found that the government did not withhold any exculpatory Brady material as Ebersole contends.  Ebersole points to a statement made by the government in its opposition to his Second Supplement to Motion for New Trial, in which the government stated that certain documents that were requested by Ebersole through the FOIA, but were not provided to him, were physically located at a BATFE facility in Washington, D.C.  The government provided these documents to the

---

[10] Ebersole has notified the Court that he intends to appeal the denial of his Motion for New Trial.

16

Court.  After <u>in camera</u> review, the Court determined that these
documents did not constitute <u>Brady</u> materials.  The Court did not
reveal the information contained in these documents to Ebersole
because doing so would circumvent applicable FOIA procedures.

Finally, Ebersole argues that his counsel failed to object
to the expert testimony provided by Strobel pursuant to <u>Daubert
v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).  The
government responds that before trial, defense counsel filed a
motion entitled "Defendant's Motion Challenging Expert Testimony"
(docket #24), which relied on <u>United States v. Dorsey</u>, 45 F.3d
809, 813 (4th Cir. 1995), a case in which the Fourth Circuit
applied <u>Daubert</u>.  Ebersole argues that the failure to re-raise
this issue, after certain flaws in the April 22, 2002, test were
discovered on cross-examination, constitutes ineffective
assistance of counsel.  This argument fails, however, because
Ebersole has not demonstrated that this failure to readdress the
expert issue satisfies either prong of <u>Strickland</u>.  Strobel's
qualifications as an expert were unimpeachable.  That the
particular test he performed may have had errors does not render
him unqualified to be an expert.  Moreover, trial counsel
vigorously cross-examined Strobel about the deficiencies in the
test he administered, thus making those inconsistencies known to
the jury.  Therefore, Ebersole's counsel was not ineffective for
failing to re-raise <u>Daubert</u> issues.

17

3.   Ineffective Assistance of Counsel for Failure to
Provide Video Evidence in the Correct Format

Ebersole spends the next several pages focused on dispelling the "legal myth of the infallible canine," a concept he borrows from Justice Souter's dissenting opinion in Illinois v. Caballes, 543 U.S. 405 (2005) ("The infallible dog, however, is a creature of legal fiction.").[11]  He argues that this concept of infallibility somehow improperly influenced the court's decision to not allow Ebersole to play certain video evidence of canine testing he conducted following the April 22, 2002, test.

The Fourth Circuit ruled in Ebersole I that the argument that the Court abused its discretion in limiting Ebersole's use of a videotape purporting to show him administering an odor recognition test to his bomb-sniffing dogs was "without merit." Ebersole, 411 F.3d at 533 n. 16.  Because this issue was previously decided on direct appeal, Ebersole is barred from raising it again in a collateral attack on his conviction.  See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) ("We agree with the district court that the three issues stated above have been previously decided by this court, and therefore Boeckenhaupt will not be allowed to recast, under the

---

[11] In Caballes, the majority held that "the use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view—during a lawful traffic stop, generally does not implicate legitimate privacy interests."  Id. at 409.

18

guise of collateral attack, questions fully considered by this court in 1968."); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues [previously addressed and rejected on direct appeal].").

To the extent that this is a new argument based on an ineffective assistance of counsel claim, trial counsel's failure to provide a copy of the video in a suitable format does not satisfy the second prong of Strickland.  As Ebersole concedes in his § 2255 Motion, the Court granted his counsel's motion for leave to use a laptop computer and present electronic evidence. Although counsel's failure to produce a copy of the videotape suitable for playback in the Court's multimedia players is arguably "outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, given the extensive evidence produced by the government, and because the Court allowed him to testify as to the video's contents at trial, Ebersole cannot demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694. Accordingly, Ebersole's third ineffective assistance of counsel claim fails.

4.   Ineffective Assistance of Counsel for Failure to Object
to Sentencing Enhancements

Ebersole's final argument is that trial counsel failed to
object to various sentencing enhancements and that the FOIA
documents produced post-trial demonstrate that such enhancements
were improper.  An error in the application of the Sentencing
Guidelines cannot be raised in a § 2255 Motion, barring
extraordinary circumstances.  United States v. Pregent, 190 F.3d
279, 283-84 (4th cir. 1999) ("Thus, while § 2255 applies to
violations of statutes establishing maximum sentences, it does
not usually apply to errors in the application of the Sentencing
Guidelines."); see also United States v. Mikalajunas, 186 F.3d
490, 496 (4th Cir. 1999) ("We join our sister circuits in holding
that a misapplication of the guidelines typically does not
constitute a miscarriage of justice.").  Extraordinary
circumstances do not exist in any of the five alleged errors of
Ebersole's counsel.

Ebersole first attacks his counsel's failure to object to
the Court's two-point enhancement under U.S. Sentencing
Guidelines Manual § 2B1.1(b)(11) for conduct involving a
conscious or reckless risk of death or serious bodily injury.
This same issue was brought before the Fourth Circuit and
rejected.  Ebersole, 411 F.3d at 536 n. 19 ("By contrast, we
cannot say that the court misapplied the two-level enhancement

for an offense involving conscious or reckless risk of death or serious bodily injury, under United States Sentencing Guidelines Manual § 2B1.1(b)(11) (2002)."). Therefore, Ebersole is precluded from raising this argument again in a § 2255 Motion. Boeckenhaupt, 537 F.2d at 1183.

Even if this argument were not precluded, however, Ebersole's assertion that with "the additional problems with the BATF test and the financial conflict of both the BATF and DSS, Inc. it is clear beyond any reasonable doubt that the Defendant's dogs and handlers were properly trained, but improperly tested" is not supported by the evidence. The faults associated with the April 22, 2002, test were examined in-depth at trial, even without the assistance of the newly discovered internal BATF testing procedures. Thus, Ebersole's claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.

Ebersole's second argument concerns the Court's awareness, or lack thereof in his opinion, of the BATF's internal testing procedures when sentencing him. He argues that the Court analyzed his culpability using a higher standard than appropriate. The performance of Ebersole's dogs during the test conducted on April 22, 2002, was but one element of evidence of Ebersole's fraud. He continues to ignore the extensive evidence of the failed tests made "on the street," the falsification of

21

the tests and credentials of the dog handlers, and the grossly inflated billing to FEMA. The cumulative effect of his numerous falsehoods fully supported the conviction and the sentence imposed. The additional information about the BATF testing standards in no respect erodes the basis for the sentence.

Ebersole's third argument focuses on the failure of trial counsel and the Court to consider language in the contracts between Detector Dogs and the various government entities stating that "Both parties agree and understand that this agreement is NOT a declaration of certainty that all explosive materials will be detected and the health and safety of the public completely protected." § 2255 Motion, Ex. 5. The terms in the contract qualifying the amount of risk undertaken by Detector Dogs does not alter the conclusions of the jury regarding Ebersole's guilt, or the Court's conclusions as to an appropriate sentence because the clear issue at trial and the basis for the sentence was Ebersole's fraudulent misrepresentations about the training and qualifications of the dogs and their handlers.

Ebersole's fourth argument concerns whether the Court considered the alleged positive impact that his company had on the affected agencies. However, as the government points out, Ebersole spoke of this supposed positive impact at his original sentencing, stating that "Because of our hard work, the number of bomb threats at the Department of State, the Federal Reserve and

the IRS went down dramatically."  Tr. of Sentencing at 23, Sept. 8, 2003.  Thus, the Court did consider this issue, but rejected it.  That decision has been effectively affirmed on appeal and is not a proper issue for collateral review.  <u>Boeckenhaupt</u>, 537 F.2d at 1183.

Ebersole's fifth and final argument is that the Court failed to consider the value of the services he did render in calculating the loss amount.  Ebersole made similar arguments before the Court during his initial sentencing.  The Court denied the Defendant's Motion for Downward Departure Based on Loss Amount Being Overstated at that time.  In doing so, the Court noted that U.S. Sentencing Guidelines Manual § 2B1.1, comment 2(F)(v), states that there is not to be any credit for value of items or services received in a fraud case.  The Court went on to state,

> Moreover, in this case, there'd be no way even if the law permitted that kind of a set-off, there is just no evidence before this Court upon which we could make a finding as to the value of the services provided since the essence of this case was that the detection dogs were unable to do their job, and therefore, the fact that the dogs were at those locations does not mean that they were actually providing any value.

Tr. of Sentencing at 12, Sept. 8, 2003.  This issue was considered, and rejected, by the Court at sentencing, and is not properly raised as a collateral attack.

23

5.   Cumulative Effect of Ebersole's Ineffective Assistance
of Counsel Claims

Ebersole maintains that the Court must analyze his
ineffective assistance of counsel claims cumulatively, rather
than individually.  To support this argument he cites Wiggins v.
Smith, 539 U.S. 510 (2003) and Williams v. Taylor, 529 U.S. 362
(2000), and purports to quote Wiggins as holding that in all
§ 2255 motions, courts must "evaluate the totality of evidence -
both that adduced at trial and evidence adduced in habeas
proceedings."  § 2255 Motion, at 3 (citing Wiggins, 539 U.S. at
536).

Neither Williams nor Wiggins help Ebersole.  In these cases,
the Supreme Court was considering the sentencing phase in a
capital case.  Having found counsel's performance at the
sentencing phase to be deficient, thus satisfying the first prong
of Strickland, the Court then considered whether the petitioner
had been prejudiced by the deficient performance.  In determining
whether there was prejudice, the Court considered the totality of
the mitigating evidence that should have been available to the
sentencing jury.  In weighing the effect of all the available
mitigating evidence against the aggravating factors, the Court
found in both instances that the failure to introduce the
additional mitigating factors prejudiced the defendants.
Contrary to Ebersole's argument, the Fourth Circuit's case law is

24

in accord.  See Emmett v. Kelly, 474 F.3d 154, 170 (4th Cir. 2007) ("In death penalty cases, to assess prejudice, the court 'reweigh[s] the evidence in aggravation against the totality of available mitigating evidence.'") (quoting Wiggins, 539 U.S. at 534).

As discussed above, Ebersole has not been able to establish that his counsel's performance was deficient in any respect. Therefore, the cumulative effect of deficient performance is not an issue in this case.  As the Fourth Circuit has clearly held, the first prong of Strickland is determined on an issue-by-issue basis.  See Fisher v. Angelone, 163 F.3d 835, 852-3 (4th Cir. 1998) ("To the extent this Court has not specifically stated that ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively, we do so now.") (citing Jones v. Stotts, 59 F.3d 143, 147 (10th Cir. 1995) (noting that cumulative-error analysis evaluates only the effect of matters determined to be error, not the cumulative effect of non-errors)).  Ebersole's ineffective assistance of counsel claims must therefore be considered on an individual basis.  For the reasons discussed above, none of the alleged defective assistance claims have any merit.  Accordingly, Ebersole's § 2255 Motion will be dismissed.

C.   Evidentiary Requests

Ebersole has requested an evidentiary hearing on the matters

25

he presents in his § 2255 Motion.  This request is echoed in his Motion for Discovery and Discovery Request.  "A federal court in a habeas proceeding must hold an evidentiary hearing when the petitioner alleges facts which, if true, would entitle her to relief."  United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293, 312 (1963)).  As stated more explicitly in the Court's ruling on Ebersole's Motion for New Trial, Ebersole, 2007 WL 219969, the errors about which he complains are insufficient to establish the need for an evidentiary hearing and do not entitle Ebersole to any further discovery.  Even if the amount of explosives used in the April 22, 2002, test were not in compliance with the testing standards announced in the individual contracts, this deficiency was elicited at trial.  Moreover, Ebersole again fails to identify any evidence that undercuts the evidence at trial that showed that forty-four of the sixty explosives utilized in the April 22, 2002, test were missed by the six dogs, with three canine teams failing to alert on all ten of the explosive samples.  Nor has Ebersole demonstrated why the voluminous evidence presented at trial that is not associated with the April 22, 2002, test, and which conclusively established the numerous fraudulent acts alleged in the indictment, should be disregarded.  Accordingly, Ebersole's motions for discovery will be denied.

V. CONCLUSION

For the above stated reasons, Ebersole's § 2255 Motion (docket #207) will be dismissed with prejudice and his Motion for Discovery (docket #198) and Discovery Request (docket #218) will be denied by an appropriate Order accompanying this Memorandum Opinion.

Entered this 6th day of March, 2007.

                                        /s/
                                _____
                                Leonie M. Brinkema
                                United States District Judge
Alexandria, Virginia

27